**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **CHAVTZ SEALS,** | ) | **CASE NO. 1:06 CV 1592** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| **GENERAL MOTORS CORP.,** | ) | |
| | ) | |
| **Defendant.** | ) | **MEMORANDUM OPINION** |

This matter is before the Court on the Motion for Summary Judgment of Defendant, General Motors Corp. ("GM") (Docket #25). Previously, on May 26, 2006, Plaintiff, Chavtz Seals, filed his Complaint in the Cuyahoga County Court of Common Pleas, Case No. CV 06 592719. Count I of his Complaint is a workplace intentional tort claim against GM, stemming from an injury he received while at work on June 22, 2004. Count II of his Complaint is a products liability claim, related to the injury, brought against an unnamed defendant. On June 29, 2006, GM removed the case to this Court.

## FACTUAL AND PROCEDURAL BACKGROUND

The undisputed facts in this case are as follows:

### I. Mr. Seals's Injury.

requested." (Motion for Summary Judgment, Exhibit H.)

On June 30, 2007, Ms. Misterka also completed a typed, Health and Safety Incident Report. (Motion for Summary Judgment, Exhibit 4.) The typed Report states under the heading "problem" that the "retaining plate had broken off from the tilt table a week prior to the accident" and that "the weld had broke and had been reported was not repaired." (Deposition of Ms. Misterka, Exhibit T.) The typed Report, prepared by Ms. Misterka, was also signed by Mr. Fenderson, Mr. Buddie, and Area Manager Dave Sands. (*Id.*)

Mr. Seals testified during deposition that after he was injured, Mr. Buddie "walked around the conveyor belt. He bent down and he picked up the plate off the floor. To me, it seemed like he knew it was there." (Deposition of Mr. Seals at pp. 31-35.) Aside from the typed Report prepared by Ms. Misterka following the incident, this is the only evidence offered by Mr. Seals that GM knew of a problem with the retaining plate prior to his injury. Mr. Fenderson, Mr. Buddie, and Mr. Seals's regular supervisor, Jim Keller, all stated during deposition that they were not aware that the metal retaining plate had broken off prior to the incident involving Mr. Seals. (Deposition of Mr. Fenderson at pp. 49, 74, Motion for Summary Judgment Exhibit B; Deposition of Mr. Buddie at pp. 14-15, Motion for Summary Judgment Exhibit E; Deposition of Mr. Keller at p. 8, Motion for Summary Judgment Exhibit I.) Mr. Fenderson stated that all the information he received was from Mr. Seals. (Deposition of Mr. Fenderson at p. 49. Mr. Seals stated during deposition that after his injury he heard from other workers that the plate had been broken off for some period of time prior to the incident. However, Mr. Seals was not able to provide the names of the other workers who had related this information to him. (Deposition of Mr. Seals at pp. 34-35.)

## II. Mr. Seals's Acceptance of the GM Buy-Out and Execution of Release.

At some point prior to filing his Complaint, Mr. Seals had received notice of a voluntary buy-out of GM employees.[1] After filing his Complaint in this case, Mr. Seals states that he "started looking into the offered buyouts" because of the pain from his knee injury. (See Affidavit of Mr. Seals at ¶¶ 11-12.) On June 20, 2006, Mr. Seals signed documents entitled "Special Attrition Plan GM-UAW Plants" and "Special Attrition Plan Conditions of Participation Release Form" which confirmed his decision to accept the voluntary buy-out. Pursuant to the terms of the Special Attrition Plan, Mr. Seals agreed to voluntarily quit in exchange for a lump sum payment of $70,000, which Mr. Seals acknowledges to have received. (Motion for Summary Judgment Exhibit G; Interrogatory Answers at No. 26, Exhibit F.) In addition, Mr. Seals executed a Release as a condition of the voluntary buyout. (Motion for Summary Judgment Exhibit G at GM0047.) The Release stated as follows:

> In consideration for participation in the Special Attrition Plan, I hereby release and forever discharge GM, Delphi, the UAW, and their officers, directors, agents, employees, stockholders and employee benefit plans from all claims, demands and causes of action (claims) known or unknown which I may have related to my employment or the cessation of my employment or denial of any employee benefit. This release specifically includes, without limitation, a release of any claims I may now have under The Employee Retirement Income Security Act of 1974 (ERISA); the Age Discrimination in Employment Act (ADEA); which prohibits discrimination based on age; Title VII of the Civil Rights Act of 1964 which prohibits discrimination in employment based on race, color, national origin, religion or sex; the Equal Pay Act; state fair employment practices or civil rights laws; and any other federal state or local laws or regulations, or any common law actions relating to employment discrimination. This includes without limitation, any claims for breach of employment contract, either express or implied, and wrongful discharge. This release does not waive claims that arise only after the execution of this release.

---

[1] "Special Attrition Plan GM-UAW Plants," memorialized in the National Agreement and Memorandum of Understanding dated March 22, 2006.

issues of material fact exist as to each element of the employer intentional tort claim, including questions of fact as to GM's knowledge of the alleged dangerous condition; GM's knowledge of substantial certainty of injury; and, whether Mr. Seals was required to work in the allegedly dangerous conditions despite GM's knowledge of the alleged "substantial certainty of injury."

On August 7, 2007, GM filed its Reply Brief in Further Support of Summary Judgment (Docket #29). GM states that Mr. Seals has had actual notice since at least December 2006 that GM intended to assert the affirmative defense of release.[3] GM states that it was not aware of the existence of the Release at the time its original Answer was prepared, and only learned of the Release during document production, at which time it provided a copy to Mr. Seals's Counsel. Accordingly, GM asserts that no party will be prejudiced by allowing GM to amend its answer to include "release" as an affirmative defense.[4] Further, GM asserts that it had no obligation to deal with Mr. Seals's attorney when it offered Mr. Seals the buy-out and Release and that all of Mr. Seals's claims relating to his employment were extinguished by the Release. Finally, GM states that it is entitled to summary judgment on Mr. Seals's employer intentional tort claim because Mr. Seals has presented no evidence to establish that anyone had knowledge of the broken metal plate prior to Mr. Seals's injury and that there is no evidence to suggest that GM affirmatively decided to ignore a safety issue to the detriment of Mr. Seals.

**SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of

[3] See Footnote 2.

[4] Id.

law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.*, 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmoving party. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't*

*of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred with the Ninth Circuit that "'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.'" *Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988)). FED. R. CIV. P. 56(e) also has certain, more specific requirements:

> [Rule 56(e)] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley*, 20 F.3d at 225-26 (citations omitted). However, evidence not meeting this standard may be considered by the district court unless the opposing party affirmatively raises the issue of the defect.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, the district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson*, 477 U.S. at 248. The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249. The judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## DISCUSSION

### I.     Release.

Mr. Seals's injury occurred on June 22, 2004. At some point during the first half of 2006, prior to filing his Complaint, Mr. Seals received notice of a voluntary buy-out of GM employees.

On May 26, 2006, Mr. Seals filed the instant lawsuit, setting forth his employer intentional tort claim. After filing his Complaint in this case, Mr. Seals states that he "started looking into the offered buyouts" because of the pain from his knee injury. On June 20, 2006, Mr. Seals signed documents entitled "Special Attrition Plan GM-UAW Plants" and "Special Attrition Plan Conditions of Participation Release Form" which confirmed his decision to accept the voluntary buy-out. By its express language, the Release releases GM, Delphi, and UAW from all claims and causes of action, known or unknown, which an employee may have related to

his employment.

In signing the Release, Mr. Seals expressly released GM from all claims and causes of action he had related to his employment. Mr. Seals was expressly advised to consult with an attorney regarding the terms of the Release. He chose not to do so. Through the Release, employees accepting a buy-out agreed to release GM from all claims and causes of action related to their employment. There is nothing to suggest that Mr. Seals was tricked or coerced into signing this Release, or that his signature agreeing to the release was somehow invalid. Based upon the express language of the Release, Mr. Seals's claim against GM in this case has been released and GM is entitled to summary judgment as a matter of law.

**II. Employer Intentional Tort.**

Even if this Court were to find that Mr. Seals's intentional tort claim fell outside the parameters of the Release, which this Court expressly finds it does not, Mr. Seals has failed to set forth evidence sufficient to support his intentional tort claim.

The parties agree that the decision in *Fyffe v. Jeno's, Inc.*, 59 Ohio St. 3d 115, 570 N.E.2d 1108 (1991), delineates the standard for an intentional tort claim raised against an employer. The *Fyffe* test requires a plaintiff to prove that his employer:

1. Had knowledge of the existence of a dangerous condition, process, procedure or instrumentality within its business operation;

2. Knew that if the employee were subjected by his employment to such dangerous condition, process, procedure, or instrumentality, then harm to the employee would be a substantial certainty; and

3. Under such circumstances and with such knowledge, did act to require the employee to perform the dangerous task.

*Fyffe*, 59 Ohio St. 3d 115, 570 N.E.2d 1108, Paragraph 1 of Syllabus.

"To establish an intentional tort of an employer, proof beyond that required to prove negligence and beyond that to prove recklessness must be established." *Id.* at Syllabus. It must be shown that "the employer knew that injuries to employees [were] certain or substantially certain to result from the process, procedure or condition." *Id.* at Syllabus. In order to prove a claim of intentional tort, a plaintiff must show actual knowledge on the part of the employer of "the exact dangers which ultimately caused injury." *Podgurski v. GMC*, 65 Fed. Appx. 960, 963 (6th Cir. 2003) (citing *Sanek v. Duracote Corp.*, 43 Ohio St. 3d 169, 539 N.E.2d 1114, 1117 (Ohio 1989)). "In other words, the plaintiff must show more than negligence or recklessness, and the plaintiff must show more than a high risk of injury." *Klepsky v. Dick Enterprises, Inc.*, 55 Fed. Appx. 270, 273-74 (6th Cir. 2003) (citing *Jandro v. Ohio Edison Co.*, 167 F.3d 309, 313 (6th Cir. 1999)). "The plaintiff must show that the employer '( 1) specifically desired to injure the employee; or (2) knew that injury to an employee was certain or substantially certain to result from the employer's act and, despite this knowledge, still proceeded.'" *Id.* (quoting *Mitchell v. Lawson Milk Co.,* 40 Ohio St. 3d 190, 532 N.E.2d 753, 756 (Ohio 1988)).

The Court in *Fyffe* explained the types of conduct on the part of the employer that do and do not rise to the level of an intentional employment tort:

> Where the employer acts despite his knowledge of some risk, his conduct may be negligence. As the probability increases that particular consequences may follow, then the employer's conduct may be characterized as recklessness. As the probability that the consequences will follow further increases, and the employer knows that injuries to employees are certain or substantially certain to result from the process, procedure or condition and he still proceeds, he is treated by the law as if he had in fact desired to produce the result. However, the mere knowledge and appreciation of a risk -- something short of substantial certainty -- is not intent.

*Fyffe*, 59 Ohio St. 3d 115, 570 N.E.2d 1108, Syllabus at Paragraph 2.

The facts of this case do not rise to the level of an intentional employment tort as contemplated by the Court in *Fyffe* and subsequent cases interpreting *Fyffe*. Mr. Seals has presented no evidence to this Court that GM was certain or substantially certain that Mr. Seals would be injured by the bracket/plate which is alleged to have been broken, nor has Mr. Seals provided any documentation or witness testimony to substantiate the claim that GM had knowledge of the alleged problem prior to Mr. Seals's injury. While the Court takes note of the Report prepared by Safety Supervisor Nicole Misterka, prepared after Mr. Seals's injury, which states that the problem had been reported to a supervisor approximately one week before Mr. Seals's injury. neither GM nor Mr. Seals can identify any basis for this statement. There is no evidence in the documents produced or in the testimony and affidavits provided to this Court that supports Mr. Seals's assertion that GM had knowledge of the alleged risk prior to the time Mr. Seals was injured. Accordingly. the Court finds no conflict as to any material fact and GM is entitled to summary judgment as a matter of law.

**III. Products Liability Claim.**

Count II of the Complaint is a products liability claim against a John Doe defendant. As Plaintiff has not named a defendant relative to this claim, and no evidence has been presented to the Court regarding this claim, the Court hereby dismisses Count II of the Complaint without prejudice.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Document #25) is GRANTED as to Count I. Count II is dismissed without prejudice. This case is hereby TERMINATED.

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: August 29, 2007